| | | |
|---|---|---|
| **LEIGH ANN BURNS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **ORDER** |
| | ) | |
| **CAROLYN W. COLVIN, Acting Commissioner** | ) | |
| **of Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment

and Memorandum in Support, (Doc. Nos. 12, 13); Defendant's Motion for Summary Judgment

and Memorandum in Support, (Doc. Nos. 15, 16); Plaintiff's Supplemental Memorandum, (Doc.

No. 18); and Defendant's Response in Opposition to Plaintiff's Supplemental Memorandum,

(Doc. No. 20).

## I.     BACKGROUND

### A.     Procedural Background

Plaintiff Leigh Ann Burns ("Plaintiff") seeks judicial review of Defendant's denial of her

social security claim.  (Doc. No. 1).  On or about August 18, 2010, Plaintiff protectively filed an

application for a period of disability and disability insurance benefits under Title II of the Social

Security Act, 42 U.S.C. §§ 405, et seq., alleging an inability to work due to disabling conditions

beginning on July 1, 2010.  (Doc. Nos. 10 to 10-10: Administrative Record ("Tr.") at 164, 191).

The Commissioner initially denied Plaintiff's application on July 20, 2011, (Tr. 105–08), and

upon reconsideration on March 27, 2012, (Tr. 111–14).  Plaintiff filed a timely written request

for a hearing on April 4, 2012.  (Tr. 19).

On November 7, 2012, Plaintiff, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). (Tr. 36–74). The ALJ issued a decision on November 29, 2012, denying Plaintiff's claim. (Tr. 16–30). Plaintiff filed a request for review of the ALJ's decision on or about February 12, 2013, (Tr. 13), which was denied by the Appeals Council on March 27, 2014, (Tr. 1). Therefore, the November 29, 2012 ALJ decision became the final decision of the Commissioner on March 27, 2014.

Plaintiff's Complaint seeking judicial review and a remand of her case was filed in this Court on May 23, 2014. (Doc. No. 1). Plaintiff's Motion for Summary Judgment, (Doc. No. 12), was filed October 17, 2014, and Defendant's Motion for Summary Judgment, (Doc. No. 15), was filed December 10, 2014. The pending motions are ripe for adjudication.

B.     Factual Background

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes,[1] at any time between July 1, 2010, when Plaintiff's disabling conditions commenced, and the date of the ALJ's decision on November 29, 2012. To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ concluded that Plaintiff was not under a disability at any time from July 1, 2010, through the date of his decision, November 29, 2012. (Tr. 19).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

---

[1] Under the Social Security Act, 42 U.S.C. §§ 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

(1) whether the claimant is engaged in substantial gainful activity—if yes, not disabled;

(2) whether the claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;

(3) whether the claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;

(4) whether the claimant has the residual functional capacity ("RFC") to perform his or her past relevant work—if yes, not disabled; and

(5) whether, considering the claimant's RFC, age, education, and work experience, he or she can make an adjustment to other work—if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fourth and, alternatively, the fifth steps that Plaintiff was not disabled. (Tr. 28–30).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since July 1, 2010, the alleged disability onset date. (Tr. 21). At step two, the ALJ found that Plaintiff had severe impairments of diabetes mellitus with retinopathy, seizures, arthritis, carpal tunnel syndrome, and depression. (Id.). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22–24).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform medium work, except she could perform no overhead reaching with the right non-dominant upper extremity; could not work at unprotected heights or around dangerous

machinery; could no more than frequently[2] handle and finger with her left hand; was limited to simple, routine tasks that do not have strict production quotas; was able to maintain attention and concentration for a continuous period of at least 2 hours at a time over the course of an 8-hour workday; could tolerate occasional changes in the workplace; and could avoid hazards in the workplace. (Tr. 24–28). In making her finding, the ALJ stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 24). The ALJ further opined that she "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Id.).

At the hearing, the vocational expert ("VE") classified Plaintiff's past relevant work as a microfilm clerk as light work with a skill level of 2 and testified that Plaintiff would be able to perform such work. (Tr. 69–70). Consequently, at the fourth step, the ALJ found that Plaintiff could perform her past relevant work as a microfilm clerk because such work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 28–30). The ALJ also found, in the alternative at step five, that Plaintiff could perform other jobs existing in significant numbers in the national economy. (Id.). Specifically, the ALJ found that Plaintiff could perform the jobs of an industrial sweeper cleaner, Dictionary of Occupational Titles ("DOT") # 389.683-010; a church cleaner, DOT # 389.667-010; and a bundle clerk, DOT # 361.687-018. (Tr. 29). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between July 1, 2010, and the date of her

---

[2] Although the ALJ's RFC finding as stated in the heading of Section 5 of the Findings of Fact and Conclusions of Law restricted Plaintiff to no more than "occasional" handling and fingering with the left hand, this appears to be a typographical error, which is discussed more fully below in Section III.A.

decision on November 29, 2012.  (Tr. 30).

## II.  STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  The District Court does not review a final decision of the Commissioner de novo.  Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979).  As the Social Security Act provides, if the Commissioner's findings as to any fact are supported by substantial evidence, they shall be conclusive.  42 U.S.C. § 405(g); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").  "Substantial evidence has been defined as more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (alteration in original) (quoting Perales, 402 U.S. at 401).  However, substantial evidence may be somewhat less than a preponderance. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence.  Hays, 907 F.2d at 1456; see also Smith, 795 F.2d at 345.  Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is substantial evidence in the record to support the final decision

below.  Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III.    DISCUSSION

On appeal to this Court, Plaintiff argues in her Motion for Summary Judgment that the ALJ erred as a matter of law in denying her claim on four grounds: (1) the ALJ did not pose a proper hypothetical question to the VE; (2) the ALJ did not properly assess Plaintiff's mental RFC; (3) the ALJ did not properly evaluate a treating physician's opinion; and (4) the ALJ failed to consider lay evidence from Plaintiff's mother.  (Doc. No. 13 at 2).  In her Supplemental Memorandum addressing the applicability of Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), Plaintiff further argues that: (1) the ALJ failed to properly assess Plaintiff's RFC and reconcile conflicting medical opinions; (2) the ALJ failed to consider Plaintiff's limitations in concentration, persistence, or pace; and (3) the ALJ failed to properly determine Plaintiff's credibility.  (Doc. No. 18).  Plaintiff's second assignment of error in her Motion for Summary Judgment regarding the ALJ's assessment of her mental RFC is similar to the second issue raised in her Supplemental Memorandum as to her limitations in concentration, persistence, or pace. Therefore, these arguments will be analyzed together.  The remaining arguments are distinct, and the Court will address each in turn.

### A.    The ALJ's Hypothetical Question

Plaintiff first argues that the ALJ failed to ask the VE a proper hypothetical question. Specifically, Plaintiff argues that the ALJ's hypothetical to the VE did not comport with her RFC finding and that it did not include any visual limitations.  (Doc. No. 13 at 5–8).  As Plaintiff notes, the ALJ's RFC finding as stated in the heading of Section 5 of the Findings of Fact and Conclusions of Law restricted Plaintiff to no more than "occasional" handling and fingering with the left hand, (Tr. 24), but the ALJ's hypothetical to the VE assumed a person who could

perform "frequent" handling and fingering with the left hand, (Tr. 69–70). Plaintiff argues, therefore, that this error requires a remand because the hypothetical question improperly stated Plaintiff's impairments. (Doc. No. 13 at 7).

Plaintiff correctly cites Walker v. Bowen for its holding that a VE's opinion "must be in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." 889 F.2d 47, 50 (4th Cir. 1989). In addition, an ALJ's hypothetical questions must "adequately reflect" a plaintiff's RFC as determined by sufficient evidence. Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005). However, the ALJ has some discretion in constructing hypothetical questions to communicate a claimant's limitations to the VE, and the hypothetical need not exactly match the language contained in the RFC finding. See Johnson, 434 F.3d at 659; Walker, 889 F.2d at 50-51.

Here, the ALJ relied on substantial evidence when determining Plaintiff's RFC and phrasing the hypothetical question to the VE. Although the ALJ's initial statement of Plaintiff's RFC restricted her to no more than "occasional" handling and fingering with the left hand, this appears to be a typographical error in the ALJ's written decision. After stating this RFC finding in the heading of Section 5, the ALJ goes on to analyze the record and explain her findings. In this detailed explanation, the ALJ states, on two different occasions, her finding that Plaintiff should not work at a job that requires more than "frequent" handling and fingering with the left hand. (Tr. 26–28). Specifically, after finding that Plaintiff experienced arthritis and carpal tunnel syndrome, the ALJ noted that those symptoms responded well to treatment and that Plaintiff "had clearing of triggering of her left 3rd finger following corticosteroid injection." (Tr. 26). The ALJ further noted that Plaintiff had reported doing well, "with minimum hand stiffness that clears with topical Voltaren gel," and that Plaintiff "testified that she could still use her

hands." (Tr. 25–26). Accounting for these symptoms, the ALJ explained that she was further limiting Plaintiff's RFC to work that requires "no more than frequent handling and fingering with the left hand." (Tr. 26). Thereafter in her summary of Plaintiff's RFC, the ALJ again stated that she was limiting Plaintiff's RFC to "frequent handling and fingering with the left hand." (Tr. 28). Therefore, the Court finds that the ALJ's RFC finding limited Plaintiff to frequent, rather than occasional, handling and fingering with the left hand. Consistent with this finding, the hypothetical presented to the VE contained the same limitation to frequent handling and fingering and, therefore, was proper. (Tr. 69–70).

Plaintiff also faults the ALJ for not including any visual limitations in the hypothetical. An ALJ's hypothetical need only set out those impairments that affect a claimant's ability to work. See Walker, 889 F.2d at 50. Here, the ALJ considered Plaintiff's diagnosis of diabetic retinopathy and her allegations that her blurry vision affected her ability to work. The ALJ noted, however, that Plaintiff testified that she experiences blurry vision at times, but not often, and the episodes do not last long. The ALJ also noted that Plaintiff reported that she can drive a car and she reads the newspaper daily and that Plaintiff's neurologist reported "that her eye movements were full with no nystagmus." (Tr. 25–26). Accordingly, the ALJ reasonably declined to incorporate any visual limitations into the RFC finding because such limitations were unsupported by the record and, therefore, not required to be included in the hypothetical. Accordingly, the Court finds that the ALJ's hypothetical was proper as it sufficiently accounted for all of Plaintiff's limitations, and Plaintiff's objection is overruled.

B.     The ALJ's Assessment of Plaintiff's Mental RFC

Plaintiff next argues, both in her Motion for Summary Judgment and in her Supplemental Memorandum addressing the applicability of Mascio, that the ALJ did not provide a function-by-

function analysis of Plaintiff's mental limitations and that the ALJ failed to include any mental limitations regarding concentration, persistence, or pace in the RFC finding. (Doc. Nos. 13 at 8–11; 18 at 4–5). Specifically, Plaintiff contends that the RFC finding is unsupported because the ALJ found that Plaintiff had moderate limitations in concentration, persistence, or pace but failed to account for those limitations in Plaintiff's RFC. The Court finds that the ALJ did conduct a proper function-by-function analysis and incorporate the appropriate limitations into her RFC finding and that the ALJ's analysis is supported by substantial evidence.

First, the ALJ considered Plaintiff's history of depression. Plaintiff's testimony indicated she was diagnosed with depression over eight years ago; however, the ALJ noted that "the record contains very limited documentation of treatment." (Tr. 26). Furthermore, Plaintiff reported no sleep, energy, or appetite problems; she reported she had never been hospitalized for mental problems; and she did not report any symptoms consistent with manic episodes or anxiety attacks. (Tr. 27). Accordingly, the ALJ determined "[t]here is no testimony or clinical record showing that [Plaintiff's] depression has ever affected her ability to work." (Id.). Consequently, the ALJ appropriately excluded any work limitations associated with Plaintiff's depression from the RFC finding.

Next, contrary to Plaintiff's argument, the ALJ analyzed Plaintiff's memory problems and her impairments regarding concentration, persistence, or pace. To begin, the ALJ considered Plaintiff's allegations of memory problems; however, the ALJ noted that Plaintiff had not made any complaints to any of her physicians or sought treatment of any kind for memory issues and, "based on [Plaintiff's] testimony, her alleged memory problem has not affected her active lifestyle." (Tr. 27). Therefore, the ALJ concluded that there was no objective medical evidence supporting any limitation based upon Plaintiff's memory problems.

The ALJ then went on to discuss Plaintiff's mental limitations with respect to understanding, carrying out, and remembering instructions. The ALJ cited a consultative psychologist's opinion indicating that Plaintiff had some difficulties in tests concerning focus and concentration but that she was capable of understanding, retaining, and following instructions. (Tr. 23, 27). The ALJ also considered testimony from Plaintiff and her mother regarding Plaintiff's daily activities. Despite Plaintiff's alleged issues with depression, memory, and maintaining focus and concentration, the ALJ noted that Plaintiff drove a car; taught Sunday school; performed errands without difficulties, including shopping, housework, and preparing meals; had no problems with personal care; took care of pets; attended doctor appointments; went to the library; went to the movies every other week; sat and read the daily paper; and regularly interacted with family and friends. (Tr. 24–28). Accordingly, the ALJ accounted for Plaintiff's mental limitations, including her ability to tolerate work pressures, to make work-related decisions, and to understand, carry out, and remember instructions, by further limiting her RFC to work involving no more than simple, routine tasks that do not have strict production quotas and adding that Plaintiff should not work a job that requires attention and concentration for a continuous period greater than two hours at a time. (Tr. 27–28). The ALJ also accounted for Plaintiff's limitations regarding changes in a routine work setting by further restricting her RFC to allow only occasional changes in the workplace. (Id.).

Plaintiff further faults the ALJ's analysis by claiming she failed to assess Plaintiff's ability to interact in the workplace. Although the ALJ did not discuss specifically Plaintiff's limitations with respect to responding appropriately to supervision or coworkers, an ALJ need not articulate a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record. Bayliss v. Barnhart, 427 F.3d 1211, 1217

(9th Cir. 2005). The ALJ found that Plaintiff had only mild difficulties in social functioning and was "capable of interacting independently, appropriately, effectively, and on a sustained basis." (Tr. 23, 27–28). Therefore, the ALJ did not err by not specifically articulating a function-by-function analysis regarding Plaintiff's ability to interact appropriately in the workplace.

The Court finds that the ALJ analyzed the record as a whole, including various medical opinions and documents, as well as Plaintiff's testimony about her symptoms, and sufficiently articulated the function-by-function analysis regarding Plaintiff's mental limitations. Consequently, the Court finds that the ALJ complied with the function-by-function assessment requirements of SSR 96–8p and that the ALJ's decision is supported by substantial evidence.

In her Supplemental Memorandum, Plaintiff also argues that the Mascio decision requires a remand because the ALJ's RFC finding did not sufficiently account for Plaintiff's moderate limitations in concentration, persistence, or pace and the ALJ did not make a specific finding as to Plaintiff's ability to stay on task. (Doc. No. 18 at 4–5). In Mascio, the ALJ found that the claimant had moderate difficulties in maintaining concentration, persistence, or pace, but the ALJ's RFC finding, and consequently the hypothetical presented to the VE, limited the claimant to merely "light work." 780 F.3d at 637–38. In reviewing that case, the Court of Appeals for the Fourth Circuit held that an ALJ does not adequately account for a claimant's limitations in concentration, persistence, or pace by merely limiting the claimant's RFC to simple, routine tasks or unskilled work. Id. Unlike Mascio, however, the ALJ's RFC finding here did not merely limit Plaintiff to simple, routine tasks. The ALJ explained step-by-step how she accounted for each of Plaintiff's mental limitations. She then adequately accounted for Plaintiff's moderate limitations in concentration, persistence, or pace by limiting Plaintiff to simple routine repetitive tasks in a setting that does not have strict production quotas and adding

that she is unable to work a job that requires her to maintain attention and concentration for a continuous period greater than two hours at a time over the course of an eight-hour workday and more than occasional changes in the workplace. (Tr. 24, 28). Such a finding also implicitly addresses Plaintiff's ability to stay on task by limiting her to maintaining attention and concentration for no more than two hours at a time.

Therefore, unlike in <u>Mascio</u>, in which the ALJ gave no explanation regarding whether the claimant's mental limitations affected his ability to work, the Court finds that the ALJ in this case sufficiently addressed and accounted for Plaintiff's deficits in concentration, persistence, or pace and how those limitations affected Plaintiff's ability to perform work-related activities, including her ability to stay on task. Accordingly, the Court finds that the ALJ did not err and that the Plaintiff's objections must be overruled.

C.    <u>The Weight Given a Treating Physician</u>

Plaintiff next contends that the ALJ improperly disregarded the opinion of Dr. Kleinmann, who is an endocrinologist that has been treating Plaintiff for more than twenty years. (Doc. No. 13 at 13–14). The Fourth Circuit has held that the treating physician rule does not require that a treating physician's opinion automatically be afforded controlling weight. <u>Hunter v. Sullivan</u>, 993 F.2d 31, 35 (4th Cir. 1992). "[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." <u>Mastro v. Apfel</u>, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." <u>Id.</u> (quoting <u>Craig</u>, 76 F.3d at 590).

Here, Dr. Kleinmann opined that Plaintiff's "medical condition makes it impossible for her to do any full-time work" and that managing her "medical conditions is in itself a full-time job." (Tr. 28, 534). The ALJ considered Dr. Kleinmann's opinion and provided her reasoning for assigning it little weight. Specifically, the ALJ stated she gave "little weight to the broad medical source statement regarding the claimant's inability to work made by Dr. Kleinmann . . . because it is contrary to the objective medical evidence and the treatment notes as a whole." (Tr. 28). The ALJ then went on to explain the objective medical evidence negating Dr. Kleinmann's opinion, including Dr. Kleinmann's own treatment notes. The ALJ noted that on a routine visit with Dr. Kleinmann in September 2010, Plaintiff "reported fatigue, but no other symptoms, and her physical exam did not indicate any abnormalities." (Tr. 26). "In a follow up appointment in December 2010, [Plaintiff] reported that she was feeling okay." (Id.). Dr. Kleinmann's notes from September 2011 report that Plaintiff had some low and high blood sugar readings but do not indicate that Plaintiff's situation had worsened or needed any urgent care. (Tr. 27). Similarly, Dr. Kleinmann's notes from July 2012 do not indicate any abnormalities or significant changes in Plaintiff's condition. (Tr. 26–27). Finally, the ALJ noted that, while Dr. Kleinmann opined that managing Plaintiff's medical conditions was a full-time job, the entire record showed that Plaintiff attended no more than one routine appointment every two to three months, and the record did not contain any evidence of hospitalizations or emergency room visits. (Tr. 28).

Furthermore, Dr. Kleinmann's conclusion that Plaintiff was unable to do any full-time work is not a medical opinion, but rather an opinion on an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1-3), 416.927(d)(1-3). The ALJ evaluated Dr. Kleinmann's opinion and determined that it was inconsistent with substantial record evidence. Accordingly, the ALJ

properly assigned Dr. Kleinmann's opinion little weight,[3] and absent "specious inconsistencies," that determination should not be disturbed.[4]   Therefore, the Court finds that the ALJ's finding is supported by substantial evidence and Plaintiff's objection must be overruled.

D.      The ALJ's Treatment of Plaintiff's Mother's Testimony

Plaintiff next faults the ALJ for allegedly failing to consider two reports completed by Plaintiff's mother regarding Plaintiff's symptoms and limitations.   (Doc. No. 13 at 15–16).   In the first report, Plaintiff's mother indicated that Plaintiff was unable to remember simple instructions; could not pay attention for very long; had to keep rereading written instructions; had to have spoken instructions repeated multiple times; and was "very stressed out," "highly depressed," and "nervous."  (Tr. 222–23).   In the second report, Plaintiff's mother indicated that Plaintiff was unable to go out alone and had to have someone in the car with her; did not remember things; had slow short-term concentration; had arthritis in her hand; was moody; did not handle stress well; and did not handle changes in routine well.   (Tr. 243, 245–46).   Plaintiff contends that the Social Security regulations require an ALJ to consider statements from friends or family members when assessing a claimant's RFC, and because the ALJ failed to do so, remand is necessary.

An ALJ is not required to refer to or discuss every piece of evidence in his or her

---

[3] "Statements by medical sources that a patient is disabled, unable to work, or meets the listing requirements are not medical issues, but are administrative findings reserved for the Commissioner.   Because they are administrative findings, 'treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance.'"   Pascoe v. Astrue, No. 1:11-cv-226, 2012 WL 3528054, at *3 (W.D.N.C. July 23, 2012), report and recommendation adopted, No. 1:11-cv-226, 2012 WL 3527933 (W.D.N.C. Aug. 14, 2012) (quoting SSR 96-5p).

[4] "An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies' or has not given good reason for the weight afforded a particular opinion."   Christian v. Apfel, 168 F.3d 481 (4th Cir. 1998) (per curiam, unpublished) (citation omitted).

decision.  Grubby v. Astrue, No. 1:09-cv-364, 2010 WL 5553677, at *6 (W.D.N.C. Nov. 18, 2010), report and recommendation adopted, No. 1:09-cv-364, 2011 WL 52865 (W.D.N.C. Jan. 7, 2011).  This is especially the case when the evidence is cumulative of other record evidence that the ALJ did consider and discuss.  See Cordell v. Barnhart, No. 1:05-cv-281, 2006 WL 5435534, at *3–4 (W.D.N.C. May 19, 2006).  Here, Plaintiff's mother reported, in general, that Plaintiff had problems with memory loss, was depressed, had concentration issues, did not handle stress or changes in routine well, and had arthritis in her hand.  Most of these symptoms as reported by Plaintiff's mother are cumulative of Plaintiff's own testimony or other record evidence that the ALJ considered.  Furthermore, most, if not all, of the evidence offered by Plaintiff's mother was specifically considered or taken into account in the ALJ's analysis.  For example, Plaintiff's mother indicated that Plaintiff had slow short-term concentration, which the ALJ considered in her analysis and accounted for in the RFC finding regarding Plaintiff's concentration limitations.  (Tr. 26–28).  Similarly, the ALJ considered Plaintiff's mother's testimony that Plaintiff had trouble remembering things and that her memory had deteriorated, and then the ALJ explained how the objective medical evidence did not support these statements.  (Tr. 27).

    Although the ALJ may not have specifically and individually discussed each symptom as reported by Plaintiff's mother, there was no requirement to do so because the ALJ's decision sufficiently addressed the record evidence and all Plaintiff's alleged symptoms as a whole.  Furthermore, the Court has found that substantial evidence supports the ALJ's conclusions; therefore, any failure on the part of the ALJ to explicitly discuss the mother's cumulative reports is harmless.  See Mitchell v. Colvin, No. 5:13-cv-00171-FDW, 2014 WL 4793236, at *4 (W.D.N.C. Sept. 25, 2014) (holding that an ALJ's failure to discuss lay witness testimony constitutes harmless error where the ALJ's conclusions are supported by substantial evidence).

Therefore, Plaintiff's objection as to the ALJ's treatment of Plaintiff's mother's testimony is overruled.

E.    The ALJ's Assessment of Plaintiff's RFC

In her Supplemental Memorandum addressing the implications of the Mascio decision, Plaintiff argues that a remand is warranted because the ALJ did not properly assess her RFC and reconcile conflicting medical opinions.  Specifically, Plaintiff argues that: (a) the ALJ did not resolve a purported conflict between the opinions of Dr. Wilson and Dr. Krishnamurthy despite assigning "substantial weight" to their opinions; (b) the ALJ did not make any findings regarding Plaintiff's social functioning; and (c) the ALJ did not include any environmental restrictions as opined by Dr. Woods and Dr. Gardner despite assigning "great weight" to their opinions.  (Doc. No. 18 at 2–3).

As Plaintiff notes, the ALJ gave substantial weight to the opinions of two non-examining state agency medical consultants, Dr. Wilson and Dr. Krishnamurthy, and each doctor's opinion differed slightly regarding Plaintiff's limitations with respect to specific categories of social interactions.  (Tr. 27, 85–86, 102).  However, immediately after stating she gave these doctors "substantial weight," the ALJ went on to state that she "disagree[d] with their conclusions stating the claimant has moderate social limitations."  (Tr. 27).  The ALJ then explained why she disagreed with Dr. Wilson's and Dr. Krishnamurthy's opinions regarding Plaintiff's social limitations.  (Id.).  Specifically, the ALJ explained that neither doctor had the opportunity to hear or consider Plaintiff's testimony or the testimony of her mother or to examine Plaintiff in person.  The ALJ then explained that, based on this testimony regarding Plaintiff's "relatively active social life," including her regular interactions with family and friends, her extensive involvement in her church, and the frequency with which she went out in public to shop or perform errands

without any reported issues, Plaintiff had, at most, mild limitations in social functioning.  (Tr. 27–28).  Therefore, while the ALJ did not explicitly address each doctor's opinion regarding Plaintiff's social limitations and resolve every perceived inconsistency in favor of one doctor over the other, the ALJ implicitly resolved any inconsistency by analyzing the evidence and determining that Plaintiff had only mild social limitations.  Furthermore, to the extent that Dr. Wilson's and Dr. Krishnamurthy's opinions conflicted, the ALJ did not rely upon either opinion regarding Plaintiff's social limitations, and there was other substantial evidence supporting the ALJ's conclusion.  Therefore, any failure by the ALJ to explicitly resolve a purported conflict between the doctors' opinions is harmless.[5]  Consequently, the Court finds that the ALJ properly evaluated the medical opinions and made the appropriate findings regarding Plaintiff's social functioning.  The RFC determination is supported by substantial evidence, and Plaintiff's objection is overruled.

Plaintiff also faults the ALJ's treatment of two non-examining state agency physicians, Dr. Woods and Dr. Gardner.  Plaintiff again argues that, while the ALJ assigned "great weight" to these doctors' opinions, the ALJ did not explain why she declined to adopt the environmental restrictions contained in the doctors' RFC assessments.  Both Dr. Woods and Dr. Gardner opined that Plaintiff "should avoid heights and hazards as well as lung irritants."[6]  (Tr. 84, 100).  Accordingly, the ALJ's RFC finding indicated that Plaintiff "cannot work at unprotected heights or around dangerous machinery" and that she "can avoid hazards in the workplace."  (Tr. 24).

---

[5] "[E]ven assuming that the ALJ did err, any such error by the ALJ was harmless because remand would not lead to a different result."  Dover v. Astrue, No. 1:11-cv-120, 2012 WL 1416410, at *5 (W.D.N.C. Mar. 19, 2012), report and recommendation adopted, No. 1:11-cv-120, 2012 WL 1416592 (W.D.N.C. Apr. 24, 2012).

[6] The Court notes that neither doctor indicated that Plaintiff "must" avoid these environmental hazards, as Plaintiff claims.  (Doc. No. 18 at 3).

Therefore, contrary to Plaintiff's argument, the ALJ's RFC finding clearly accounted for Dr. Woods's and Dr. Gardner's opinions that Plaintiff "should avoid heights and hazards."

Plaintiff further faults the ALJ's RFC finding for not including any limitations that Plaintiff should avoid concentrated exposure to atmospheric conditions, including fumes, odors, dusts, gases, and poor ventilation, as found by Dr. Woods and Dr. Gardner. At step five, the ALJ found that that Plaintiff could perform the jobs of an industrial sweeper cleaner, DOT # 389.683-010; a church cleaner, DOT # 389.667-010; and a bundle clerk, DOT # 361.687-018. (Tr. 29). According to the DOT, atmospheric conditions are "[n]ot present" in all three of these jobs, see DOT # 389.683-010, 389.667-010, & 361.687-018, and Plaintiff has not presented any evidence to the contrary. Therefore, to the extent that the ALJ's failure to include any atmospheric limitations in Plaintiff's RFC was an error, such error was harmless because atmospheric conditions are not present in the jobs the ALJ found Plaintiff could perform. Accordingly, the Court finds that substantial evidence supports the ALJ's RFC determination and that the ALJ properly evaluated the medical opinions. Therefore, Plaintiff's objection is overruled.

F.      The ALJ's Credibility Determination

Finally, Plaintiff argues that the ALJ's assessment of her credibility is not supported by substantial evidence. The ALJ is responsible for making credibility determinations and resolving conflicts in the evidence. Hays, 907 F.2d at 1456. Consequently, the ALJ is accorded deference with respect to determinations of a claimant's credibility. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Indeed, "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Id.

The ALJ must follow a two-step process to determine a claimant's credibility and

whether she is disabled by pain or other symptoms.  First, the regulations require "at the threshold a showing by objective evidence of the existence of a medical impairment 'which could reasonably be expected to produce' the actual pain, in the amount and degree, alleged by the claimant."  Id. at 594 (quoting 20 C.F.R. §§ 416.929(b), 404.1529(b)).  If the claimant meets this threshold, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work."  Id. at 595.  This evaluation must take into account:

> not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain . . . ; and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (citing 20 C.F.R. §§ 416.929(c), 404.1529(c)).

The Social Security Administration has drafted template language for inclusion in ALJ decisions.  See Mascio, 780 F.3d at 638 n.9.  The Fourth Circuit criticized this boilerplate language in Mascio, finding that the language "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'"  Id. at 639 (quoting Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012)).  An ALJ's use of the boilerplate language, however, does not require a remand when the ALJ properly analyzes the claimant's credibility elsewhere.  Id. at 639–40 (holding that use of this language constitutes harmless error if the ALJ "properly analyzed credibility elsewhere"); accord Jones v. Colvin, No. 6:13-CV-00059, 2015 WL 1477892, at *10 (W.D. Va. Mar. 30, 2015) ("The ALJ's use of standard language in his analysis of [the claimant's] credibility does not render invalid his otherwise valid analysis because the ALJ provided adequate reasoning for his decision.").

Here, after finding that Plaintiff met the first prong of the test, the ALJ began his

discussion of Plaintiff's credibility by using the boilerplate language. (Tr. 25). The ALJ then determined that Plaintiff's subjective complaints were not fully credible because they were not consistent with the evidence of record. (Tr. 25–28). In evaluating Plaintiff's credibility, the ALJ considered the objective medical evidence, Plaintiff's medical and treatment history, her statements about her symptoms, her medications and their efficacy, and her daily activities. (Id.). The Court finds that the ALJ engaged in a well-reasoned credibility evaluation that renders any error due to the boilerplate language harmless.

Unlike in Mascio, in which the ALJ did not "explain how he decided which of Mascio's statements to believe and which to discredit," 780 F.3d at 640; here, the ALJ considered each allegation and proceeded symptom-by-symptom to explain which of Plaintiff's allegations she credited and her reasons for doing so. For example, the ALJ considered Plaintiff's allegation that "her diabetes has caused seizures and convulsions." (Tr. 24). The ALJ noted, however, that Plaintiff's treatment records did not show any abnormalities or dramatic changes related to her diabetes, and they indicated that Plaintiff's treatment for her seizures had been very successful and she had not had a seizure since 2001. (Tr. 26). Similarly, as discussed previously, the ALJ considered Plaintiff's allegations associated with her arthritis and carpel tunnel syndrome, blurry vision, memory, depression, social interaction, and concentration. In each instance, the ALJ considered Plaintiff's testimony alongside the other record evidence and made a finding as to the degree of Plaintiff's limitations and the extent to which it affects her ability to work, thereby analyzing Plaintiff's credibility symptom-by-symptom.

According to the credibility factors set forth by the regulations, the ALJ also considered testimony and evidence regarding Plaintiff's daily activities. See 20 C.F.R. § 404.1529(c)(3)(i) (listing daily activities as a credibility factor); Campbell v. Colvin, No. 1:13-cv-233-MR-DLH,

2014 WL 6680369, at *6 (W.D.N.C. Nov. 25, 2014) ("The ALJ must consider the claimant's activities of daily living as one of the numerous aforementioned factors in 20 C.F.R. § 404.1529 when assessing pain."). Plaintiff argues that the ALJ erroneously discredited her complaints based solely upon her daily activities and that the ALJ failed to explain how her daily activities translated into an ability to work on a full-time basis. The Court disagrees. The ALJ considered Plaintiff's daily activities along with the record evidence as a whole, including the objective medical records, Plaintiff's responsiveness to treatments, and medical opinions of various doctors. Furthermore, in considering Plaintiff's daily activities, the ALJ considered the frequency and duration with which Plaintiff participated in those activities. For example, the ALJ noted, among other things, that Plaintiff read the newspaper daily; went to the grocery store once a week, which takes about two hours; occasionally ran errands, went to doctor appointments, and raked leaves off the deck; attended church every Sunday where she taught Sunday school; went to a nearby movie theater almost every week; regularly performed household chores and visited family; and visited friends every other week. (Tr. 25).

As Plaintiff notes, the Fourth Circuit faulted the ALJ in Mascio because "he said nothing about Mascio's ability to perform [certain functions] for a full workday." 780 F.3d at 637. Plaintiff argues that remand is necessary here because the ALJ committed the same error by not explaining "how she determined that performing a certain activity for a short period translates into an ability to perform a different activity for a full workday." (Doc. No. 18 at 8). Plaintiff's argument, however, is misplaced. First, the ALJ's failure in Mascio to explain how the claimant could perform certain functions for a full workday, standing alone, was not the reason Mascio was remanded. The Fourth Circuit went on to explain that the ALJ's lack of analysis was especially troubling in that case because the record also contained conflicting evidence that the

ALJ failed to address, and because the ALJ's discussion cut off mid-sentence.  780 F.3d at 637.

Ultimately, the case was remanded on this issue because the Fourth Circuit was "left to guess

about how the ALJ arrived at his conclusions on Mascio's ability to perform relevant functions"

due to the deficiencies in the ALJ's analysis as a whole.  Id.  The Fourth Circuit's discussion on

this issue did not address the claimant's credibility or the ALJ's analysis thereof.

Second, Plaintiff attempts to infer that the ALJ considered Plaintiff's daily activities in a

vacuum and "concluded that these part-time sporadic activities were the equivalent of tolerating

the physical and mental stress of working eight hours a day, five days per week at the medium

exertional level."  (Doc. No. 18 at 8).  However, the ALJ did not merely rely on Plaintiff's daily

activities to assess Plaintiff's credibility, nor did she rely solely on those activities to determine

Plaintiff's RFC.  The ALJ provided the following summary of her findings regarding Plaintiff's

alleged disability:

> [Plaintiff] was diagnosed with diabetes mellitus approximately 20 years ago.  She
> also developed seizures approximately 24 years ago.  She reported that she has a
> history of depression dating back 10 years.  However, [Plaintiff] has a strong work
> history despite having these impairments for the majority of her career.  The
> medical evidence does not demonstrate that since July 2010, approximately 1 year
> after being laid-off, her health conditions have changed or deteriorated to the extent
> that would prevent her from working again.  Records from her treating physicians
> do not indicate issues outside of the routine care for her diabetes and more recent
> developments, such as her arthritis and retinopathy, are well controlled by
> treatment.  Further, her aforementioned testimony detailing her relatively active
> lifestyle contradicts her alleged disability.

(Tr. 25–26) (citations omitted).  The ALJ then spent nearly three more pages discussing each

alleged symptom and the record evidence relevant to that symptom and explaining her credibility

finding as to each.

In short, the ALJ properly analyzed Plaintiff's credibility, so any use of boilerplate

language in the credibility determination was, at most, harmless error.  Therefore, the Court finds

that the ALJ's finding is supported by substantial evidence, and Plaintiff's objection is overruled.

**IV.    CONCLUSION**

In light of the deferential standard of review applied under the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), the Court finds that there is substantial evidence to support the Commissioner's final decision, and it should be affirmed.

**IT IS, THEREFORE, ORDERED** that:

1.    Plaintiff's Motion for Summary Judgment, (Doc. No. 12), is **DENIED**;

2.    Defendant's Motion for Summary Judgment, (Doc. No. 15), is **GRANTED**; and

3.    The Clerk of Court is directed to close this case.

Signed: January 20, 2016

Robert J. Conrad, Jr.
United States District Judge